## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ROUNDPOINT MORTGAGE
SERVICING CORPORATION,

        Plaintiff,

  v.

NATHALIE HUBERT-TOUSSAINT
and LAVERNE M. REEDER,

        Defendant.

C.A. No. K19L-03-014 WLW

## ORDER

### Plaintiff's Motion to Dismiss Defendants' Counterclaim
*Granted.*

Catherine DiLorenzo, Esquire of Alba Law Group, Wilmington, Delaware and Adam V. Orlacchio, Esquire of Blank Rome LLP, Wilmington, Delaware; co-counsel for Plaintiff.

Nathalie Hubert-Toussaint and Laverne M. Reeder, Smyrna, Delaware; *pro se* Defendants.

WITHAM, R.J.

Presently before the Court is Plaintiff, RoundPoint Mortgage Servicing Corporation's (hereinafter "RoundPoint") Motion to Dismiss Defendants' Counterclaim pursuant to Rule 12(b)(6) of the Delaware Superior Court Rules of Civil Procedure.[1]  After considering Plaintiff's motion, Defendants' response in opposition, and the record, it appears to the Court that:

1. On December 31, 2015, Defendants, Nathalie Hubert-Toussaint and Laverne M. Reeder, executed and delivered a promissory note (the "Note") in favor of Primelending, a PlainsCapital Company ("Primelending"), to obtain a mortgage loan in the amount of $410,000.00 (the "Loan").[2]  To secure the Loan, Defendants delivered a mortgage (the "Mortgage") to Mortgage Electronic Registration System (MERS) as nominee for Primelending, and the Mortgage was recorded with the Kent County Recorder of Deeds.[3]  On June 30, 2017, MERS assigned the Mortgage to RoundPoint, which was also recorded on July 5, 2017 with the Kent County Recorder

---

[1] Plaintiff also submitted a Brief in Support of Motion to Dismiss Defendants' Counterclaim. Plaintiff's Motion to Dismiss Defendant's counterclaim is filed pursuant to Rule 12(b)(6) and apparently Rule 126(c) of the Delaware Rules of Civil Procedure. Rule 126 does permit the filing of a brief but under special procedures of commercial disputes. Mortgage foreclosure actions are not considered to be a part of such disputes. No request for a brief schedule was made following the filing of the Motion to Dismiss by Plaintiff. Therefore, the Court must strike the brief filed with the motion. The Court will not consider the brief, but will make a decision based on the facts of the case and the legal principals involved.

[2] *See* Compl. at ¶ 2; *see also* Compl. Ex. E.

[3] *See* Compl. at ¶ 2-3.

of Deeds.[4]

2. On July 1, 2018, Defendants defaulted on the Note and the Mortgage by failing to make required monthly payments, and they have made no payments since.[5] On March 11, 2019, RoundPoint commenced foreclosure proceedings by filing the foreclosure Complaint.[6]

3. On April 30, 2019, Defendants filed an Answer to the Complaint for Foreclosure of Mortgage, Affirmative Defense and Counterclaim (the "Counterclaim").[7] Pursuant to Rule 12(b)(6) of the Delaware Superior Court Rules of Civil Procedure, RoundPoint filed a Motion to Dismiss the Counterclaim.[8]

4. Defendants contend that they have entered into a new agreement with RoundPoint by sending RoundPoint what they call a "Conditional Acceptance for Value and Counter Offer of Claim for Proof of Claim and Tender of Payment Offering" ("Counteroffer").[9] Because RoundPoint failed to respond in any way to the

---

[4] *Id.* at ¶ 3.

[5] *Id.* at ¶ 5.

[6] *See* Compl.

[7] *See* Defendants' Answer to Complaint for Foreclosure of Mortgage, Affirmative Defense and counterclaim ("D. Mot").

[8] Plaintiff's Motion to Dismiss Defendants' Counterclaim. Defendants also filed an Affidavit in Reply to RoundPoint Motion to Dismiss (the "Affidavit").

[9] *See* "D. Mot" at ¶ 10 (the document Defendants call "Conditional Acceptance for Value and Counter Offer of Claim for Proof of Claim and Tender of Payment Offering" can be found online by performing a simple Google search; a blank form of this document is attached to this

Counteroffer, RoundPoint entered into a binding contract with Ms. Hubert-Toussaint and Mr. Reeder, Defendants claim.[10] As a part of this new agreement, RoundPoint had to accept Defendants' "Equitable Remittance Coupon" (the "Coupon") for $450,000.00, according to Defendants.[11] Because RoundPoint failed to accept it and discharge all of Defendants' prior obligations under the Note, Defendants claim RoundPoint owes them $1,200,000.00 in damages.[12] Further, Defendants argue that any disputes related to this new "agreement" must be done through the Arbitration Association.[13]

5. On a motion to dismiss pursuant to Rule 12(b)(6), the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of its [complaint] would the [plaintiff] be entitled to relief."[14] Upon this Court's review of a motion to dismiss, "(I) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the

---

memorandum).

[10] *See Id.*

[11] *See Id.*, see also D. Mot. Exhibit A (the "Equitable Remittance Coupon" does not appear to have any legal significance at all and is not attached to any actual account).

[12] *Id.* at ¶ 11.

[13] *Id.* at ¶ 11.

[14] *Alpha Contracting Services, Inc.*, No. K18C-08-034, 2019 WL 151482, at *1 (Del. Super. Jan. 9, 2019) (citing *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000)).

opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[15]

6. In sum, Defendants state no viable claim for relief. It appears to the Court that the allegations in the Defendants' Counterclaim, as well as in the Reply to the Plaintiff's Motion to Dismiss, are without merit. Furthermore, Defendants could be sanctioned by the Court because their Counterclaim appears to be frivolous, and it is a waste of the Court's resources. It should be noted that Defendants continue restating their claims in two separate filings using what seems to be intentionally misleading and confusing language filled with meaningless legalese.

7. Defendants' claim appears to be based on the "vapor money" theory.[16] The theory is related to Public Law 73-10, enacted H.J. Res. 192, 73rd Cong. (1933) (the "House Joint Resolution 192") to ensure uniform value to the coins and currencies of the United States.[17] House Joint resolution 192 states that obligations requiring payment in gold or a particular kind of coin or currency are against public policy, and that U.S. currency is legal for all debts.[18]

---

[15] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002).

[16] Defendants do not use this term in their filings.

[17] *See* H.J. Res. 192 (73rd Cong. (1933)).

[18] *Id.*

5

8. Borrowers, in utilizing this theory, have initiated lawsuits attempting to invalidate debts or argue the debts have been repaid based on theories originating from the suspension of the gold standard.[19] One of these theories is a "vapor money" theory, which borrowers use to argue that a promissory note is the equivalent to cash.[20] According to this theory, the bank deposits such notes into its own account, lists them as assets on the ledger, and lends it back to individuals.[21] Through bookkeeping procedures, the bank supposedly "creates" money.[22] Courts across the country have rejected this theory.[23]

---

[19] *See Gallant v. Deutsche Bank Nat. Trust Co.*, 766 F.Supp.2d 714, 721-722 (W.D. Virginia, Feb. 2, 2011).

[20] *See Id.*

[21] *Demmler v. Bank One NA*, No. 2:05-CV-322, 2006 WL 640499, at *3 (S.D. Ohio, Mar. 9, 2006).

[22] *Id.*

[23] *See, e.g., Sanford v. Robins Federal Credit Union*, No. 5:12–CV–306, 2012 WL 5875712 (M.D. Ga. Nov. 20, 2012) (rejecting plaintiff's similar attempt to invoke Public Law 73-10 as means to avoid debt repayment); *Matchynski v. Ocwen Loan Servicing*, No. 3–CV–1915–BEN 2014 WL 202625 (S.D. Cal. Jan 16, 2014) (holding that plaintiff's allegation of payment pursuant to House Joint Resolution 192 and Public Law 73-10 by way of an electronic funds transfer slip did not allege "tender" (or ability to tender the amounts owed) were insufficient to state a claim for relief); *Richardson v. Deutsche Bank Trust Co. Americas*, No. 3:08-CV-01857, 2008 WL 5225824 (M.D. Pa. Dec. 12, 2008) (dismissing plaintiffs' "vapor money" claims as "patently frivolous and a waste of judicial resources."); *Frances Kenny Family Trust v. World Savings Bank*, No. C04-03724 WHA, 2005 WL 106792 (N.D. Cal. Jan. 19, 2005) (sanctioning plaintiffs and rejecting their "vapor money" theory); *Carrington v. Fannie Mae*, No. 05-CV-73429-DT, 2005 WL 3216226, at *3 (E.D. Mich. Nov. 29, 2005) (finding plaintiffs' "vapor money" claims "fundamentally absurd and obviously frivolous").

6

9. In this case, Defendants claim that they repaid their mortgage balance with a coupon that was the equivalent to cash. Because the coupon was not a valid form of payment, Defendants never repaid their mortgage balance. An example of the coupon Defendants used is presented below:[24]

| Da Da, a nontaxpayer as defined by statute | COU1QG-72345ETDHA62GHJKC-K23459671 – IYW3504 |
|---|---|
| ABC Avenue | 3-01-19 |
| DEF, XYZ           EQUITABLE REMITTANCE COUPON | |

"Pay and Pledged

To the Order of: **PENNYMAC SAVINGS. WITHOUT RECOURSE"**

$ 80,000.00 xx

Amount of

Obligation: **EIGHTY THOUSAND DOLLARS IN CERTIFIED** CREDIT BY A NONTAXPAYER AT PAR

INTENTIONS: The above United States government obligations is hereby accepted and acknowledged and I do assign and pledge the total value of the obligation to the United States of America through the United States Department of the Treasury to be redeemed for value and receivable at the Federal Reserve, the Federal Reserve Bank, and/or any member bank and/or National Association as prescribed by statute (the act of March 9, 1933; the act of May 12, 1933; 12 USC 411; 18 USC 8; UCC 1-308; 3-419 and the intentions of the United States Congress concerning THE CURRENT SERIOUS NATIONAL EMERGENCY), and credited to grantors account.

Memo: Discharging of Government Obligations #------------------------------

x_____

Settlor and Interest Holder and Citizen of the United States of America

10. Defendants' Counteroffer did not create an enforceable contract with RoundPoint. "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[25] No reasonable person would understand that the coupon sent by Defendants to and never acknowledged by RoundPoint created a contract between the parties. Therefore, Defendants are not entitled to any damages related to the alleged contract. Furthermore, the arbitration clause included in the document attached to the

---

[24] The coupon can be accessed online.

[25] *Osborn exrel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citing *NBC Universal v. Paxson Commc'ns*, No. Civ.A. 650-N, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005).

coupon is not enforceable because no valid contract was formed.

11. In the Affidavit which Defendants filed in response to RoundPoint's Motion to Dismiss the Counterclaim, they attempt to amend their initial Response and Counterclaim by raising some additional issues, including insufficient service of process, insufficient assignment of mortgage to Roundpoint, and collateral estoppel.[26] In Delaware, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served... Otherwise, a party may amend the party's pleading only by leave of court or written consent of the adverse party..."[27] Defendants did not amend their pleading prior to RoundPoint's Motion to Dismiss and did not seek a leave of court or RoundPoint's consent to amend the pleading. Therefore, the Court will not consider additional allegations.

12. For the reasons mentioned above, Plaintiff's Motion to Dismiss Defendants' Counterclaim is **GRANTED.**

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

---

[26] D. Affidavit at ¶ 6, 19, 20 (Defendants also mention fiduciary duties violation, lack of standing, and laches).

[27] Super. Ct. Civ. R. 15.